## IN THE UNITED STATES DISTRICT COURT
## FOR THE VIRGIN ISLANDS

### DIVISION OF ST. CROIX

DIANA RIVERA SOLIS, et al.,     )
         )
    Plaintiffs,        )
         ) No. 13-12
    v.

VIRGIN ISLANDS TELEPHONE CORP.,
et al.

    Defendants.

### OPINION AND ORDER

### SYNOPSIS

Before the Court are the parties' Motions in Limine.  Plaintiffs' Motions in Limine address several matters:  Defendants' expert Paul Dorothy, the deposition testimony of witnesses in cases other than the one at bar, Officer Stephen Benjamin's summary of witness statements, the testimony of VITELCO personnel, benefits already paid to Plaintiffs, and Plaintiff Diana Solis' remarriage.  Defendant's Motions in Limine seek to exclude photographs of the decedent, evidence of settlement or compromise offers, certain evidence related to Plaintiff's expert Dan Metz, and evidence offered by Laura Fuchs Dolan.  Each will be addressed, in turn, below.

### ORDER

### I.  PLAINTIFF'S MOTIONS

#### A.  PAUL DOROTHY [221]

Plaintiffs seek to preclude Mr. Dorothy, a traffic engineer, from testifying regarding the sufficiency of the temporary traffic control plan in place at the time of decedent's accident.   At his deposition, Mr. Dorothy testified that he had not been asked to analyze the temporary traffic

control plan with respect to the Manual on Traffic Control Devices ("MUTCD"), and would not testify as to whether such a plan breached the standard of care. Defendant has not filed a response to this Motion. Therefore, the Motion will be granted.

### B. WITNESS TESTIMONY FROM OTHER LITIGATION [222]

Next, Plaintiffs move to exclude the testimony of witnesses from other lawsuits that have arisen from the Motorola contract or the accident that is the subject of this litigation. In particular, Plaintiffs refer to Defendant Santana's suit against Bonneville, and Creque-Hodge v. VITELCO, a wholly unrelated case involving a pedestrian injured by a falling cable in St. Thomas.[1] Defendant Vitelco opposes the Motion, as it concerns the prior depositions of Juan Grajales, Pablo Mojica, Danny Hernandez, Eliseo Santana, and Miguel Maldanado.

To the extent that Defendants intend to proffer prior deposition testimony from another case, such testimony is generally excluded as hearsay: i.e., an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement. F.R.E. 801(c). To the extent that Defendant contends that the testimony is admissible under F.R.E. 801(b), that subsection requires that the evidence be offered against a party or his predecessor in interest had a similar motive to develop the testimony. A "predecessor in interest" refers to one with an opportunity and motive to develop individual facts similar to those that Plaintiffs, if present, would have had. Leinberry v. Anes Electronics, Inc., 1992 U.S. Dist. LEXIS 2264 (E.D. Pa. Feb. 21, 1992). The Rule is inapplicable here, as neither Plaintiffs nor their predecessor in interest were present; Mr. Santana, in his effort to hold Bonneville liable for his own damages, cannot be said to have had the same motive as Plaintiffs in this suit. Here, Mr. Santana is a Defendant, and Bonneville is not. Moreover, no party definitively addresses the availability of the witnesses at issue, the

---

[1] Defendant Nolasco opposes the Motion, apparently only insofar as it relates to the statements made to Officer Benjamin by Pablo Lopez Mojica and Kevin Serrano Sanchez. Officer Benjamin's report is addressed infra, in Section C of this Opinion.

substance of the particular deposition testimony at issue, or the purpose for which that testimony would be offered.  Accordingly, I am unable to conclusively determine at this time whether the statements fall within the hearsay rule or an exception thereto.   Therefore, I will deny the Motion without prejudice, and reserve a final ruling on the admissibility of prior deposition testimony until the time of trial.

### C.  OFFICER STEPHEN BENJAMIN [223]

Plaintiffs seek to exclude witness statements taken by Officer Benjamin, the investigating Officer at the scene of the accident, on hearsay grounds.   In particular, Plaintiffs object to the admission of Officer Benjamin's summary of two video statements of Nolasco flagmen, Pablo Mojica and Kelvin Serrano Sanchez, who were present at the scene of the accident.   Apparently, Officer Benjamin took the witness statements by video and then summarized them in his written report.

Police officers' statements and observations recorded in a police report are typically deemed admissible under one of the exceptions to hearsay contained in Fed. R. Evid. 803(6) or (8), even when based on witness interviews rather than personal knowledge. See, e.g., Harmon v. Hamilton County, 2015 U.S. Dist. LEXIS 131446 (S.D. Oh. Sept. 29, 2015); Chrysler v. City of W. Covina, 1998 U.S. App. LEXIS 30993 (9th Cir. Dec. 4, 1998). On the other hand, except if the proponent demonstrates that the statements independently fall within a different hearsay exception, summaries of witness statements contained in reports are generally excluded under the hearsay rule. Valdes v. Miami-Dade Cnty., 2015 U.S. Dist. LEXIS 155196 (S.D. Fla. Nov. 17, 2015); Ramrattan v. Burger King Corp., 656 F. Supp. 522 (D. Md. 1987).[2]  The statements were taken the day after the accident, and thus do not qualify as a present sense impression or

---

[2]Defendant relies on McKee v. Jamestown Baking Co., 198 F. 2d 551 (3d Cir. 1952). I will not so rely, as McKee was decided prior to the enactment of the Federal Rules of Evidence.

under an excited utterance.   In terms of the residual exception of F.R.E. 807, I am not persuaded that, as the Rule requires, "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Both Messrs. Mojica and Serrano appear on the parties' witness lists, and neither party has indicated that the men are unavailable to appear at trial.

This is not to say, however, that all evidence relating to the witness' statements to Officer Benjamin must be suppressed.  For example, Defendant notes that Plaintiffs' expert witnesses relied on the statements during their investigations.  Thus, excluding the statements, Defendant argues, would eviscerate its ability to cross-examine Plaintiffs' experts.  Defendants may, of course, cross-examine Plaintiff's experts as to the bases for their opinions, even if the documents relied on are not admitted into evidence.   Moreover, it is possible that the prior statements may properly be used in some other capacity – for example, to refresh the recollections of the witnesses, or for pursuant to F.R.E. 801, should they testify at trial.  Similarly, if the statements are offered at trial for a reason other than to prove the truth of the matter asserted, I will reconsider my ruling at that time.  At this juncture, however, Defendant has made no such showing, and Plaintiff's Motion will be granted.

### D.  VITELCO PERSONNEL [224]

Plaintiffs seek to exclude testimony from VITELCO personnel regarding VITELCO's duty to provide traffic control, or those imposed by the Motorola contract.   The principles stated in my Order dated April 21, 2016, with respect to expert testimony, are equally applicable to lay testimony.  In that Order, I stated that Plaintiff's expert, Mr. Marceau, would not be permitted to opine as to the effect of this Court's legal conclusions, or the legal obligations imposed by a contract.  Instead, it is the Court's role to instruct the jury regarding the law.  The distinction that

4

Defendant attempts to draw in its opposition to Plaintiff's Motion is entirely unclear, as Defendant speaks in generalities and does not identify particular evidence that it believes admissible despite that Order.  Of course, factual evidence surrounding the parties' relationships is not excludable under those principles, but the April 21, 2016 Order stands nonetheless. Accordingly, Plaintiffs' Motion will be granted to the extent of that Order.

### E.  BENEFITS PAID TO PLAINTIFFS [225]

Plaintiffs seek to exclude evidence of life insurance, social security, or death benefits paid to Plaintiffs.  Defendants, in turn, posit that this action involves Plaintiffs' claim to be indemnified for damages suffered as the result of the decedent's death.  Plaintiffs acknowledge that there is no authority on this point within the Virgin Islands.   They point, instead, to the collateral source rule that appears in jurisdictions, other than the Virgin Islands, throughout this Circuit.  The common-law collateral source rule, as stated in the Restatement (Second) of Torts, has been adopted in the Virgin Islands.  Pedro v. Huggins, 53 V.I. 98, 102 (V.I. Super. Ct. 2010). [3]   That Rule provides that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Restatement (Second) of Torts § 920A(2) (1979). Comment (b) to Section 920A explains as follows:

> It is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance . . . the law allows him to keep it for himself…. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for

---

[3] The collateral source rule typically excludes the introduction of payments made to an injured plaintiff from other sources.  In the Virgin Islands, however, 5 V.I.C. § 427 acts as a limitation on the collateral source rule.  According to Huggins, this statute has been limited to cases seeking medical expenses or lost income.  Huggins indicates that other than the strictly construed limitations imposed by Section 427, the collateral source rule remains intact in the Virgin Islands.

him. One way of stating this conclusion is to say that it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.

Further, Comment (c) to Section 920A specifies that social security benefits, as well as life insurance, are subject to the rule that collateral benefits are not subtracted from the plaintiff's recovery.  For these reasons, evidence of payments from collateral sources is not relevant in this case, and Plaintiffs' Motion will be granted.

## F.  DIANA SOLIS' REMARRIAGE [226]

Plaintiffs have moved to exclude evidence of Diana Rivera Solis' remarriage on January 18, 2015.  Plaintiffs' Complaint states claims on Ms. Solis' behalf for the loss of society, comfort, affection, services, love, solace, and support of decedent.   As stated by our Court of Appeals in a different case, "[t]his problem would not have arisen had the case been reached for trial in a reasonable time," as Plaintiff did not remarry until almost three years after her husband's death.  Haddigan v. Harkins, 441 F.2d 844 (3d Cir. 1970).

Under Virgin Islands law, "evidence of remarriage of the decedent's surviving spouse is admissible" in an action for wrongful death.   5 V.I.C. § 76(e)(6)(c).  That statute reads, in full, as follows:

§ 76.  Action for wrongful death

Legislative intent

(a) It is the public policy of the Territory to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Subsections (b) through (j) of this section are remedial and shall be liberally construed.

Definitions

(b) As used in this section:

(1) "Survivors" means the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and

6

adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate child of the father unless the father has recognized a responsibility for the child's support.

(2) "Minor children" means unmarried children under eighteen (18) years of age.

(3) "Support" includes contributions in kind as well as money.

(4) "Services" means tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the survivors of the decedent. These services may vary according to the identity of the decedent and survivor and shall be determined under the particular facts of each case.

\*\*\*

Right of action

(c) When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person…and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person … that would have been liable in damages if death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured….

Parties

(d) The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this section, caused by the injury resulting in death. When a personal injury to the decedent results in his death, any action for the personal injury shall survive, whether or not filed at the time of death, and shall not abate. The wrongdoer's personal representative shall be the defendant if the wrongdoer dies before or pending the action. A defense that would bar or reduce a survivor's recovery if he were the plaintiff may be asserted against him, but shall not affect the recovery of any other survivor.

Damages

(e) All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint and their relationships to the decedent shall be alleged. Damages may be awarded as follows:

(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the

7

replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivors and the decedent and the period of minority in the case of healthy minor children may be considered.

(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

(3) Children of the decedent may also recover for lost parental companionship, instruction and guidance and for mental pain and suffering from the date of injury.

(4) Each parent of a deceased child may also recover for mental pain and suffering from the date of injury.

(5) Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.

(6) The decedent's personal representative may recover for the decedent's estate the following:

(a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. If the decedent's survivors include a surviving spouse or lineal descendants, loss of net accumulations beyond death and reduced to present value may also be recovered.

(b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under paragraph (5), above.

(c) Evidence of remarriage of the decedent's surviving spouse is admissible.

(7) All awards for the decedent's estate are subject to the claims of creditors who have complied with the requirements of probate law concerning claims.

Form of verdict

(f) The amounts awarded to each survivor and to the estate shall be stated separately in the verdict.

***

In the first instance, I reject Plaintiffs' contention that the evidence should be excluded under F.R.E. 403, because the probative value of the evidence is substantially outweighed by the

danger of unfair prejudice, confusing the issues, or misleading the jury.  Plaintiffs argue that the evidence will distract the jury from the fact of a happy, twenty-year marriage, and that the jury might diminish Ms. Solis' damages as a result.  This is not the type of harm contemplated by Rule 403, particularly as the jury will receive appropriate instructions regarding damages.

The parties acknowledge the utter absence of guidance from the territorial courts on the admissibility of remarriage evidence in the present context.  Nonetheless, we are not without direction.  Florida's wrongful death statute, Fla. Stat. § 768.21, like the corollary Virgin Islands statute, specifies that evidence of remarriage is admissible, but does so under the subsection relating to recovery by the decedent's personal representative.  "Under [Florida's wrongful death statute], 'evidence of remarriage of the decedent's spouse is admissible.' It has been held that this evidence is admissible 'for the sole reason of allowing the truth to be known and to keep the court from having to participate in a fraud upon the jury' but not to mitigate damages [recoverable by the surviving spouse]." Cedars of Lebanon Hospital Corp. v. Silva, 476 So. 2d 696, 708 n. (Fla. Dist. Ct. App. 3d Dist. 1985).  The Florida courts have reached this conclusion via an analysis that, like Plaintiffs' here, focused on the statutory placement of the "remarriage" phrase in relation to the phrase regarding recovery by the decedent's representative.  See Smyer v. Gaines, 332 So. 2d 655, 658 (Fla. Dist. Ct. App. 1st Dist. 1976).  In Dubil v. Labate, 52 N.J. 255, 261-62 (N.J. 1968), on which Plaintiffs rely, the court reached a conclusion similar to that of the Florida courts.  In Labate, the court noted "the desirability of honestly presenting certain facts to a jury with instructions that it would be improper for them to consider these facts in their deliberations." Id. at 262.

In the case at bar, I endorse this approach.  As a matter of policy, it strikes an appropriate balance between running counter to an atmosphere of truth, and running counter to the law of

damages.[4]   Therefore, I will deny the Motion, and will not exclude evidence of Diana Solis'

remarriage.  This ruling is qualified, however, in that Defendants shall not be permitted to argue

that the remarriage should mitigate Plaintiffs' recovery.  Additionally, the parties may address

this issue through proposed jury instructions.

## II.  DEFENDANTS' MOTIONS

### A.  PHOTOGRAPHS OF DECEDENT [237]

Defendant moves to preclude the admission of photographs of the decedent, pursuant to

F.R.E. 403.   Plaintiffs counter that the photographs are not gruesome, but depict decedent,

covered by a blanket, in order to show where his body was positioned following the accident.

Neither party has submitted the photographs for review.  Plaintiffs contend that the photographs

are thus relevant to understanding the pre- and post-collision positions and speeds of the vehicles

involved, and accident sequencing; Defendants contend that the photographs do not necessarily

demonstrate decedent's post-accident position, as medical assistance was rendered prior to the

photographs.   I note that Plaintiff has elsewhere indicated an intention to proffer a diagram of

the accident scene, which marks the decedent's post-accident location; in addition, that diagram

is included in the report of Plaintiffs' expert.  In other words, excluding the photographs does not

prevent Plaintiffs from offering evidence of decedent's post-accident positioning.  Moreover, it is

unclear how photographs of the body, whether or not they depict accurate post-accident position,

would assist a lay juror in understanding vehicle speed or vehicle positioning.  Although the

photographs, as described by Plaintiffs, do bear some relevance to this action, I find that

---

[4] I note, too, that "[r]emarriage of the spouse before the lawsuit is over should not result in a windfall for the person who negligently caused the death of the previous spouse. To so hold might well encourage a surviving spouse not to remarry until after the lawsuit for wrongful death is settled, not necessarily a socially desirable result."  Taylor v. Southern Pac. Transp. Co., 130 Ariz. 516, 520 (Ariz. 1981).

relevance substantially outweighed by the danger of unfair prejudice.  Accordingly, the photographs will be excluded pursuant to F.R.E. 403.

## B.  SETTLEMENT/COMPROMISE EVIDENCE [238]

Defendant moves to exclude evidence regarding settlement or compromise of Mr. Santana's claims in <u>Santana v. Bonneville</u>, Super. Ct. V. I. ST-12-CV-359, pursuant to Rules 408 and 403.  Plaintiffs oppose the Motion, on grounds that the settlement between VITELCO and Defendant Santana falls within F.R.E. 408(b).  Plaintiffs contend that evidence at trial may reveal an applicable exception to exclusion under that Rule.  The only possibly applicable exception under that Rule relates to evidence of offers or compromise to prove witness bias or prejudice, and thus would relate to Defendant Santana.  Plaintiffs suggest that they would use the evidence to impeach Vitelco as to whether or not Defendant Santana was waived through the intersection by flagmen.  I find that the danger of unfair prejudice outweighs the probative value of the evidence, under the circumstances of this case, and will exclude all evidence of settlement and compromise pursuant to F.R.E. 403.  Defendant's Motion will be granted.

## C.  DAN METZ [231, 239]

Pursuant to Rule 403, Defendants move to exclude an animated video relating to the accident, prepared by Plaintiff's expert Dan Metz.  Defendant Nolasco points to the video's omission of Nolasco employees, cones, and plastic drums, as well as the inaccurate depiction of a VITELCO truck parked nearby.  VITELCO further notes that the video inaccurately depicts or omits other details, such as the number of lanes of traffic, overhead stop lights, signage, and other structures.

Our Court of Appeals has determined that depictions that appear to recreate an accident are significantly more likely to confuse the jury than those that merely illustrate the principles

underlying an expert's opinion. Altman v. Bobcat, 349 Fed. Appx. 758, 763 (3d Cir. 2009). "Thus, for demonstrative evidence closely resembling the actual accident, courts generally require the proponent to establish that the demonstration shares substantial similarity with accident conditions. By contrast, if a demonstration does not appear to recreate the accident, Rule 403 generally does not require a foundational showing of similarity with accident conditions." Id. (citations omitted). The pertinent risk is whether the jury will believe that the test is a recreation of what happened in the case under consideration. Elick v. Ford Motor Co., 2010 U.S. Dist. LEXIS 62343 (W.D. Pa. June 23, 2010).

The CD submitted to the Court depicts a series of animated clips or slides showing the movement of vehicles along a roadway; no hyper-realistic images appear. The images are unpopulated by other objects or people, and there is no portrayal of the accident itself. Plaintiffs state that the video is intended to aid the jury to understand Dr. Metz' opinion regarding pre-accident speeds, and vehicle position and movement, and is not intended to reconstruct the accident. Plaintiffs further suggest that Dr. Metz will lay an appropriate foundation regarding these elements of the animation. Plaintiffs do not dispute the dissimilarities to which Defendants point. The demonstrative evidence does not closely resemble the accident; indeed, the numerous and obvious differences between the animated images and photographs of the scene, point to the conclusion that the images do not appear to recreate the accident. Thus, the video presents minimal risk that the jury will believe that it is a recreation of what happened in the case.

As a related matter, Defendant VITELCO further seeks to preclude photographs taken by Dr. Metz, as well as speed and visual determinations that he based on those photographs. In particular, Defendant contends that Dr. Metz took the photographs over three years after the

accident occurred; he then relied on those photographs to determine Mr. Santana's turning maneuver and speed.  Defendants' concerns about the animation and photographs are well taken, but are the sort of concerns that are readily and best addressed through vigorous cross-examination.  Moreover, I will consider a limiting instruction to the jury regarding the animation, should Defendants propose an appropriate instruction.

### D.  LAURA FUCHS DOLAN [240]

Defendant moves to exclude evidence proffered by Laura Fuchs Dolan, Plaintiffs' economic expert.   Defendant objects that Ms. Fuchs Dolan added a per diem of $210.00 per week to loss of support calculations, through the year 2031 – essentially, without evidence that he would have continued to earn this amount, or for how long, following his death -- thus overstating decedent's annual earning figures.

Generally speaking, the accuracy of expert testimony is not grounds for excluding the evidence.  See, e.g., EEOC v. Schott N. Am., Inc., 2009 U.S. Dist. LEXIS 8546 (M.D. Pa. Feb. 5, 2009).  Instead, cross-examination is the appropriate means for dealing with weaknesses in evidence based on sufficient, if insubstantial, facts.  Simon v. Weissmann, 301 Fed. Appx. 107 (3d Cir. 2008).  On the other hand, an expert's opinion that lacks factual basis may be excluded pursuant to F.R.E. 702, as that Rule requires that the testimony be based on "sufficient facts or data."  ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 290 (3d Cir. 2012).

Here, Defendant contends that decedent, a resident of Puerto Rico, received the per diem only while working on St. Croix, and thus would not have continued to receive that per diem until 2031 had he lived.  Ms. Fuchs Dolan testified that she included the per diem because that amount was included in decedent's income at the time of his death.  As she stated, decedent may or may not have continued to live and work in the Virgin Islands.   This does not render Ms.

Fuchs Dolan's opinion inadmissible; instead, it is a matter to be dealt with through cross-examination and the presentation of opposing testimony.  Accordingly, Defendant's Motion will be denied.


**CONCLUSION**

Motions in Limine 221, 223, 224, 225, 237, and 238 will be granted, and Motions in Limine 226, 231, 239, and 240 will be denied, to the extent stated <u>supra</u>.  Motion in Limine 222 is denied without prejudice, and may be raised at trial.  An appropriate Order follows.

**ORDER**

AND NOW, this 23rd day of June, 2016, it is hereby ORDERED, ADJUDGED, and DECREED that Motions in Limine 226, 231, 239, and 240 are DENIED, to the extent stated in the foregoing Opinion.  Motions in Limine 221, 223, 224, 225, 237, and 238 are GRANTED, to the extent stated in the foregoing Opinion. Motion in Limine 222 is DENIED, without prejudice.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court

14